**Fill in this information to identify the case:**

Debtor Name    MARKETING ANALYSTS, LLC

United States Bankruptcy Court for the: District of South Carolina

Case number: 24-03671-JD

☒ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

**MARKETING ANALYST, LLC Plan of Reorganization, January 17, 2025**

    This plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."  The Background section below should be used for that purpose.

    The Plan filed by the debtor contemplates that is secured creditors shall be paid in full with the unsecured claims to be paid no less than the liquidation yield and at least the projected disposable income over sixty (60) months.  All holders of claims against the Debtor are encouraged to real the Plan in its entirety before voting to accept or reject the plan.  The Plan provides for one class of priority claims, one class of secured claims, on class for executory contracts/unexpired leases, one class for unsecured claims, and for the payment of administrative priority claims.

**Background for Cases Filed Under Subchapter V**

1.    **A. Description and History of the Debtor's Business**

    Marketing Analysts, LLC was formed in South Carolina on June 26, 2008. On October 5, 2023, Bob Clark and Rob Pascale became the owners, with Bob owning 45% and Rob owning 55%. Bob is the Managing Member and Chief Operating Officer. Rob is the President. In addition to Rob and Bob, there are currently three other employees who are unrelated to Bob and Rob. Since taking over in 2023 the Debtor had experienced unanticipated cash flow problems. To try to alleviate these cash flow problems, the Debtor has taken steps to reduce its monthly expenditures by reducing the number of employees and other cost-saving efforts. Through these actions the Debtor was able to better stabilize its income, but in the interim had fallen behind in its payments to some of its creditors.

    Prior to filing for bankruptcy relief, the Debtor had been having discussions with two of its larger creditors, ROI Rocket.com which is a secured creditor which is owed approximately $175,000, and Azure Knowledge Corporation, an unsecured creditor which is owed approximately $320,000. As the Debtor believed that the cash flow problems had been resolved, the Debtor had reached a tentative agreement with ROI on a possible repayment plan. The discussions with Azure appeared to be going in a positive direction, but those discussions eventually broke down with Azure making threats of an imminent lawsuit to try to become a judicial lien creditor. To avoid that potential, and to maintain the status quo for the various creditors, the decision was made by the Debtor to file for bankruptcy relief under Subchapter V of Chapter 11.

2.    **B. Liquidation Analysis**

    To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is set below and reflects the information set forth in the Debtor's schedules and proofs of claim filed with this Court.

| | |
|---|---|
| Pre-petition cash on hand | $ 0.00 |
| Pre-petition bank accounts | $ 18,220.00 |

| | | |
|---|---|---|
| Collectable Accounts Receivable* | | $ 310,525.00 |
| Laptops and desktop computer | | $ 1,000.00 |
| Value of assets: | $ 332,938.13 | |
| Less Liens: | | |
| LEAF Capital Financing, LLC | | $ 98,733.53 (per Proof of Claim 9-1) |
| LEAF Capital Financing, LLC | | $ 147,055.05 (per Proof of Claim 10-1) |
| ROI Rocket.com | | $ 174,676.00 |
| Secured debts | $ 420,464.58 | |
| Net Liquidation Value | $ 0.00 | |

**C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent has provided projected financial information as Exhibit A in support of its position that it will generate sufficient revenue over the life of the Plan to make the required Plan payments and operate the debtor's business. Debtor has also taken steps to reduce its operating expenses during those months when revenues are lowest. Typically, the slowest months are January, February and March.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of approximately $ 128,997 annually for a sixty (60) month total of approximately $644,985 projected disposable income for plan payments. The final Plan payment is expected to be paid in approximately May 2030.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**ARTICLE 1:        SUMMARY**

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Marketing Anlysist, LLC (the *Debtor*) from future earnings. The Debtor does not anticipate that sales of assets or loan proceeds will be necessary for the continued operation and that the Debtor will be able to continue to operate based solely on its cash flow from future operations.

This Plan provides for the following classes of Creditors:

   One Class of priority claims (Class 1)

   One Class of secured claims (Class 2)

   One Class of non-priority claims (Class 3)

   One Class of unexpired leases (Class 4)

   One Class of equity security holders (Class 5)

Non-priority unsecured creditors holding allowed claims will receive distributions representing no less than the liquidation yield which the Debtor believes to be approximately zero (0%) percent. As noted below, the Debtor's Plan provides for an approximate 10.0% percent distribution to non-priority unsecured creditors. The Plan provides for the payment of administrative, priority, secured and unsecured claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

**ARTICLE 2:        CLASSIFICATION OF CLAIMS AND INTERESTS**

2.01 **Class 1**      All allowed claims entitled to priority under § 507(a) of the Code and priority tax claims under § 507(a)(8)).

Debtor Name: Marketing Analysts, LLC                                                                                                   Case number 24-03671-JD

The Debtor has reviewed its employment records and has determined that the below former employees earned vacation and sick leave pay or unpaid commissions or similar claims during the 180 days prior to filing. As a result, the Debtor believes that the below claims are entitled to priority treatment pursuant to 11 U.S.C. §507(a)(4).

| Name | Amount | Description |
|---|---|---|
| James Cameron | $ 4,090.45 | (accrued vacation and sick leave) |
| Tammy Detyens | $ 2,490.78 | (accrued vacation and sick leave) |
| Neha Jain | $ 5,883.68 | (accrued vacation and sick leave) |
| Paula Nyfield | $ 15,150.00 | (per Proof of Claim 13-1) (unpaid commissions) |
| Montey White | $ 4,090.45 | (accrued vacation and sick leave) |

Priority Claims are all claims entitled to priority status under §507 of the Code. This includes, generally, all wages to the extent allowed priority which are owed by the debtor; certain pre-petition and post-petition taxes owing to the United States, a state or local taxing authority; and all other statutory costs assessed or assessable by the Court.

2.02 **Class 2**     Secured Claims

The claim of LEAF Capital Financing, LLC, to the extent allowed as a secured claim under § 506 of the Code, secured by a lien upon certain assets, including personal property, accounts, equipment and inventory in the amount of $98,733.53. The secured portion of this claim in the amount of $98,733.53 will be paid as a Class 2 creditor and the unsecured portion of this claim, in the amount of $0.00 will be paid as a Class 3 creditor.

The claim of LEAF Capital Financing, LLC, to the extent allowed as a secured claim under § 506 of the Code, secured by a lien upon certain assets, including personal property, accounts, equipment and inventory in the amount of $147,055.05. The secured portion of this claim in the amount of $147,055.05 will be paid as a Class 2 creditor and the unsecured portion of this claim, in the amount of $0.000 will be paid as a Class 3 creditor.

The claim of ROI Rocket.com, to the extent allowed as a secured claim under § 506 of the Code, secured by a lien upon certain assets of the debtor in the amount of $176,676.00. This claim is secured in the amount of $87,149.55 because the value of the collateral is limited by the liens of LEAF Capital Financing, LLC. The secured portion of this claim in the amount of $87,149.55 will be paid as a Class 2 creditor and the unsecured portion of this claim, in the amount of $89,526.45, will be paid as a Class 3 creditor.

Secured Claims are all claims fully or partially secured by real estate mortgages, security agreements, chattel mortgages, lease-purchase agreements, liens or other indenture entitled to secured status under the code.

2.03 **Class 3**     All non-priority unsecured claims, including the unsecured portion of the Class 2 Creditors.

Unsecured Claims are all claims, provable and allowable, against the Debtor, other than Secured Claims, Priority Claims, or Interests.

2.04 **Class 4**     Unexpired leases and arrearage on unexpired leases of the Debtor to be assumed:

NONE

Unexpired lease and executory contracts include obligations under 11 U.S.C. §365.

2.05 **Class 5**     Equity interests of the Debtor.

Robert Clark and Robert Pascale are each 45% and 55% respective members of the Debtor and shall retain their interest in the Debtor.

Investor Interest means an interest in preferred stock, common stock, partnership interest, or any other interest denominated as equity and any and all rights or right in such interest.

Debtor Name: Marketing Analysts, LLC                                                                                               Case number 24-03671-JD

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01     Unclassified Claims

Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in a class of creditors.

3.02     Administrative Expense Claims

Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full over a period of Sixty (60) months in monthly payments without interest. Payment of administrative claimants shall be paid in monthly installments commencing thirty (30) days after confirmation of the Plan over a sixty (60) month period, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

The Debtor anticipates administrative claims for the SubV Trustee in an estimated amount of $ 8,000.00.

The Debtor anticipates a balance of approximately $ 30,000 for its attorney fees/costs.

Administrative Expense Claims are all claims and expenses arising or accruing on or after the filing date, which are entitled to priority under §503(b) or §507(a)(2), including without limitation, all expenses of administration.

3.03     Priority tax claims

Each holder of a priority tax claim, unless otherwise provided herein, will be paid in full upon confirmation of the Plan, in accordance with the provisions of §1129(a)(9) of the Code.

3.04     Statutory fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

**Article 4: Treatment of Claims and Interests**

Claims shall mean any right to payments from the debtor held by any party.  See 11 U.S.C. 101(5).

Unimpaired Class shall mean any class of claims which is not affected by the Plan of Reorganization and which is entitled to , and shall receive under this Plan, full payment pursuant to the contract or agreement with the debtor.

Impaired Class shall mean any class of claims in which all claims are given, under this Plan, less than the equivalent value of their individual claims, but more than that class could reasonably expect to receive if this were a case under Chapter 7 of the Code.

The claims and interests shall be treated as follows under the Plan:

Class 1:   Priority Claims

| | |
|---|---|
| James Cameron | $ 4,090.45 |
| Tammy Detyens | $ 2,490.78 |
| Neha Jain | $ 5,883.68 |
| Paula Nyfield | $ 15,150.00 (per Proof of Claim 13-1) |
| Montey White | $ 4,090.45 |

Class 2:   Secured Claims

The Debtor has 3 claims being paid under Class 2.

LEAF Capital Financing, LLC has filed a secured claim in the amount of $98,733.53 secured by a lien upon certain assets, including personal property, accounts, equipment and inventory.  The Debtor requests that the Court determine the amount of the secured claim of LEAF Capital Financing, LLC be established at $98,733.53 which represents the value of the creditor's interest in the estate's property, as provided in 11 U.S.C. §506, upon confirmation of the Plan Debtor proposes making monthly payments in the amount of $1,978.42 including interest at the rate of 7.5% per annum,

commencing the on the 1st day of the first full month after confirmation, until the secured claim is paid in full. The unsecured balance of this claim shall be treated as a general unsecured claim in the amount of $0.00 and treated as set forth in Class 3.

LEAF Capital Financing, LLC has filed a secured claim in the amount of $ 147,055.05 secured by a lien upon certain assets, including personal property, accounts, equipment and inventory. The Debtor requests that the Court determine the amount of the secured claim of LEAF Capital Finaning, LLC be established at $147,055.05 which represents the value of creditor's interest in the estate's property, as provided in 11 U.S.C. §506, upon confirmation of the Plan Debtor proposes making monthly payments in the amount of $2,946.68 including interest at the rate of 7.5% per annum, commencing the on the 1st day of the first full month after confirmation, until the secured claim is paid in full. The unsecured balance of this claim shall be treated as a general unsecured claim in the amount of $0.00 and treated as set forth in Class 3.

ROI Rocket.com has a claim in the amount of $ 176,676.00 secured by a lien upon certain assets, including personal property, accounts, equipment and inventory. The Debtor requests that the Court determine the amount of the secured claim of ROI Rocket.com be established at $87,149.55 which represents the value of creditor's interest in the estate's property, as provided in 11 U.S.C. §506, upon confirmation of the Plan Debtor proposes making monthly payments in the amount of $1,746.30 including interest at the rate of 7.5% per annum, commencing the on the 1st day of the first full month after confirmation, until the secured claim is paid in full. The unsecured balance of this claim shall be treated as a general unsecured claim in the amount of $89,526.45 and treated as set forth in Class 3.

**This class is impaired.**

**Class 3:**

Class 3 claims will be paid approximately 10% (rounded to the next dollar) of each allowed claim amount.

Class 3 is comprised of the following:

| Creditor | Amount |
|---|---|
| American Express | $ 6,028.59 (per Proof of Claim 4-1) |
| AMEX TRS. Co. | $ 193.78 (per Proof of Claim 8-1) |
| Ariba, Inc. | $ 955.90 |
| ATP Canada Software & Services | $ 12,575.00 |
| Azure Knowledge Corporation Canada | $ 319,618.05 |
| B3 Intelligence | $ 2,932.00 |
| BV Insights | $ 2,300.00 |
| James Cameron | $ 488.88 (amount of accrued vacation and sick leave outside of 180 days) |
| C&C Market Research | $ 3,930.00 |
| Charlotte D. Harrell, LLC | $ 262,466.25 (per Proof of Claim 11-1) |
| Dash Market Research, LLC | $ 4,000.00 (per Proof of Claim 2-1) |
| Tammy Detyens | $ 465.22 (amount of accrued vacation and sick leave outside of 180 days) |
| Neha Jain | $ 703.20 (amount of accrued vacation and sick leave outside of 180 days) |
| Lucid Holdings, Inc. | $ 136,296.71 (per Proof of Claim 12-1) |
| Luminoso Technologies, Inc. | $ 20,000.00 |
| Network Certifiied Professionals, Inc. | $ 4,049.30 |
| Paradigm Sample, LLC | $ 85,034.50 (per Proof of Claim 5-1) |
| Paula Nyfield | $ 105,722.77 (per Proof of Claim 13-1) |
| Protobi | $ 5,600.00 |
| Rep Data | $ 6,750.00 |
| Walter Roach | $ 13,114.35 |
| Rich Serrins | $ 352,625.92 (per Proof of Claim 6-1) |
| Rich Serrins | $ 24,272.00 (per Proof of Claim 7-1) |
| ROI Rocket.com | $ 89,526.45 (unsecured portion of Class 2; per Proof of Claim 15-1) |
| Ronin International Limited | $ 9,125.00 |
| Segra Fiber | $ 18,027.69 |
| SS Holdings Group, LLC | $ 14,400.00 |
| STRATEGENCE | $ 7,504.90 |
| Vista Grand | $ 35,250.00 |
| Montey White | $ 488.88 (amount of accrued vacation and sick leave outside of 180 days) |
| Worldwide Express | $ 4,682.62 (per Proof of Claim 14-1) |

Debtor Name: Marketing Analysts, LLC                                                                                                            Case number 24-03671-JD

TOTAL                                    $ 1,546,177.96

The Debtor shall commence making an semi-annual payment to each creditor listed above, on a pro-rata basis, with the first payment being due six months after the final entry of the Order confirming the plan. Any Creditor whose total distribution amount is less than $500.00 may be paid in full during the pendency of the plan.

**This class is impaired.**

**Class 4:**

Class 4 is comprised of cure of unexpired leases and executory contracts, as follows:

NONE

**This class is unimpaired.**

Class 5:

Debtor has two members/owners, who shall retain their equity interest in the Debtor.

**Article 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claims

A disputed claim is a claim that has not been allowed or disallowed (by a final non-appealable order) and as to which either (I) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has or anticipates filing an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

The Debtor reserves the right to object to any Proof of Claim or bring an action against any creditor that does not file a proof of claim, whether the claim was schedules as disputed, contingent or unliquidated, notwithstanding anything that may be interpreted to the contrary in this Plan.

5.02    Delay of distributions on a disputed claim

No distribution shall be made on a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of disputed claims

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6: ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a)    The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date of the plan:

Leases
NONE

(b)    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are subject of a pending motion to assume, and if applicable assigned, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date of the plan.

Executory Contracts are contracts or agreements to be performed by the debtor in the future, unsecured by notes or mortgages.

**Article 7: MEANS FOR IMPLEMENTATION OF THE PLAN**

Debtor Name: Marketing Analysts, LLC                                                                               Case number 24-03671-JD

Funding of the Plan.  Debtor shall fund the Plan from earnings.  The monthly payments under the Plan are estimated to be as follows:

| | | |
|---|---|---|
| Unclassified | $ 1,500.00 | SubV Trustee and the Campbell Law Firm |
| Class 1 - priority | $    528.42 | |
| Class 2 - secured | $ 6,671.40 | |
| Class 3 - unsecured | See below semi-annual payment. | |
| Class 4 - lease arrearage | $   NONE | |
| Class 5 - equity | $   NONE | |
| | | |
| TOTAL | $ 8,699.82 | |

Estimated semi-annual payments to Class 3 on are estimated to be $12,300 for years one through three and increasing to $21,300 in years four and five.  The total of the payments are approximately $159,000.

**Article 8:**        **General Provisions**

8.01  **Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

<u>Small Business Case</u> shall mean an entity defined in 11 U.S.C. 101(51D).

<u>Chapter 11</u> shall mean a case being administered under 11 U.S.C. §1101, et seq., for the reorganization of the indebtedness of the debtor.

<u>The Case</u> shall mean this proceeding under Chapter 11, which was commenced in this Court on October 9, 2024.

8.02    **Effective date**

The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03    **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforce ability and operative effect of any other provision of this Plan.

8.04    **Binding effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    **Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    **Controlling effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of South Carolina govern this Plan and any agreements, documents and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    **Corporate governance**

§ 1123(a)(6) disclosure:

The Manager and Officer of the Debtor immediately prior to the Effective Date, Robert Pascale and Robert Clark shall serve as the initial Managers and Officers of the Reorganized Debtor on and after the Effective Date.  The Managers and Officers shall serve in accordance with applicable non-bankruptcy law and the Debtor's By-Laws and other corporate governance documents, as each of the same may be amended from time to time.  Debtor has no class of equity securities with preference over another class with respect to dividends.

8.08     **Retention of Jurisdiction**

Subsequent to confirmation of the Plan, the Court will retain jurisdiction to hear and determine all claims against the Debtor and to enforce all appropriate causes of action which exist on behalf of the Debtor. The Court shall also retain jurisdiction to implement the payout provisions of the Plan prior to entry of a Final Decree, to issue any orders in connection with the plan or these proceedings, to hear and decide applications for compensation and reimbursement of expenses, to resolve objections to claims, adversary proceedings and to ultimately close the estate, to include –

Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance of priority claims;

Grant or deny any applications for the allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

Resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor or Reorganized Debtor is a party or with respect to which the Debtor or Reorganized Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

Enter such orders as may be necessary or appropriate to implement or consummate the provision of the Plan and all contracts, instruments, and other agreements or documents created in connection with the Plan, except as otherwise provided herein;

Enter an implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

Determine any other matters tha may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, or other agreement or document created in connection with the Plan, except as otherwise provided herein.

**Article 9:       Discharge**

**Discharge of Debtor who is a corporation under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)   imposed by this Plan; or
(ii)  to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)      on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
(ii)     excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Article 10: OTHER PROVISIONS**

<u>Plan Modification</u>
The Debtor may amend or modify the Plan at any time prior to the entry of an Order confirming the plan, provided the modification meets the requirements of §1122 and §1123 of the Bankruptcy Code with the exception of subsection (a)(8) of section 1123. Further, the Debtor may modify the plan at any time after confirmation of such plan under section 1191(a) and before substantial consummation, provided the modification meets the requirements of §1122 and §1123 of the Bankruptcy Code with the exception of subsection (a)(8) of section 1123. If a plan has been confirmed under section 1191(b), the debtor may modify the plan at any time within three years, not to exceed five years, as fixed by the Court but may not modify the Plan unless it meets the requirements of §1191(b).

<u>Confirmation of this Plan</u> means the Order issued by the Court implementing the Plan after if finds that the Plan: (1) has been accepted by the requisite number of creditors eligible to vote; (2) is feasible; (3) is fair and equitable; and (4) meets all of the requirements of 11 U.S.C. §1191(a) or §1191(b).

If this Plan is confirmed pursuant to 11 U.S.C. §1191(b), the Debtor shall disburse its own Plan payments.

<u>Substantial Consummation</u> of the Plan is final in this case when the Debtor begins performance after confirmation.

<u>Pro Rata</u> means the same proportion that a claim in a particular class bears to the aggregate amount of all allowed claims in said class.

<u>Class of Claims</u> shall mean all types of claims or interests (i.e. secured, priority, unsecured, subordinated, or interests) which are substantially identical in kind and nature.

The Debtor's professionals will file applications for compensation for approval of fees and expenses incurred through confirmation of the Plan. Fees and expenses incurred after the effective date will be paid by the Debtor without the need for court approval.

Respectfully submitted,
CAMPBELL LAW FIRM, P.A.

 /s/ Michael Conrady
MICHAEL H. CONRADY
Attorney for the Debtor
Post Office Box 684
Mt. Pleasant, SC 29465
(843) 884-6874/884-0997(fax)
District Court I.D. No. 5560
mconrady@campbell-law-firm.com

MARKETING ANALYSTS, LLC

 /s/ Robert Clark
ROBERT CLARK.
Owner/Managing Member

Mt. Pleasant, South Carolina
This 15th  day of April 2025